**NORTHERN OHIO RURAL WATER, Plaintiff,**

v.

**ERIE COUNTY BOARD OF COUNTY COMMISSIONERS, Defendant.**

No. 3:03 CV 7303.

United States District Court,
N.D. Ohio,
Western Division.

Dec. 7, 2004.

Daniel D. Mason, Baumgartner & O'Toole, Dennis M. O'Toole, Baumgartner & O'Toole, Susan Keating, Baumgartner & O'Toole, Sheffield Village, OH, for Northern Ohio Rural Water, Plaintiff.

Albin Bauer, II, Eastman & Smith, Toledo, Gary A. Lickfelt, Office of the Prosecuting Attorney, Sandusky, Henry N. Heuerman, Eastman & Smith, Richard T. Sargeant, Eastman & Smith, Toledo, OH, for Erie County Board of Commissioners, Defendant.

## ORDER

CARR, District Judge.

This is a dispute over who may provide water service in a particular area of Erie County, Ohio. Plaintiff Northern Ohio Rural Water (NORW) claims that it has a superior right to construct water lines and provide water service in the disputed territory under 7 U.S.C. § 1926(b) and that defendant Erie County Board of County Commissioners (Board) has violated that right by constructing water lines and providing service in the territory. This court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.

Pending are the parties' cross motions for summary judgment and defendant's counterclaim for declaratory judgment and permanent injunction.

### Background

Plaintiff is a rural water district and political subdivision created in 1989 pursuant to O.R.C. § 6119.01 et seq. It serves thirteen townships in rural areas of Lorain, Huron, and Erie Counties. Defendant operates and maintains a water and sewer district pursuant to O.R.C. §§ 6117.01 et seq. and 6103.01 et seq. Defendant's water district covers Erie County, with the exception of the Cities of Sandusky, Vermillion, and Milan.

In October, 2001, plaintiff applied for a loan from the United States Department of Agriculture, with plans to extend water service to, *inter alia,* Kelly, Mason, Fox, Camp, and Huron–Avery Roads, which are all in Erie County along what defendant calls the "State Route 250 corridor." (Doc. 32, at 3). Plaintiff received provisional approval for the USDA loan in July, 2002, and drew the first funds on that loan on August 23, 2002.

The State Route 250 corridor is of particular interest to both parties because State Route 250 is the main road leading from the Ohio Turnpike to Cedar Point, a popular amusement park and tourist destination. Accordingly, areas proximate to State Route 250 are targeted for commercial and residential development.

At the same time that plaintiff applied for the USDA loan, defendant was developing plans to extend water service to the same areas as part of a larger project, conceived in late 2000 and early 2001, to expand water service throughout Erie County. Defendant explains that its project was implemented both to facilitate commercial development, especially along State Route 250, and respond to the concerns and needs of rural residents whose water sources (wells) were inadequate.

Defendant consulted with plaintiff and others before it began construction of water lines in these areas. During these discussions plaintiff made clear that it opposed defendant's plan to build water lines in the disputed territory. Defendant, however, obtained funding from the State of Ohio to finance its project, which involved installation of water lines in the disputed areas and elsewhere in Erie County. Defendant began construction in the disputed areas in March, 2002.

Defendant defends its decision to proceed with construction despite plaintiff's objections by explaining that water quality in the disputed territory was poor and residents had long requested service. Defendant also insists that it needed to fulfill its responsibility as the "elected body responsible for providing necessary public services and planning for future economic growth." (Doc. 32, at 14).

The future economic growth defendant anticipates includes plans, which currently are being pursued with private developers, to construct a large water park, convention center, and residential area known as the "Kalahari Project." (Doc. 32, at 7). Defendant claims that this project, and others like it that may be built in the future in the State Route 250 corridor, require high-capacity water lines. Defendant contends that plaintiff's system is not intended or designed to provide such high-capacity water lines, which are essential, *inter alia*, for fire protection.

Between March and July, 2002, defendant installed water lines of various sizes along Kelly, Mason, Fox, Camp, and Huron–Avery Roads. It estimates it invested approximately one million dollars to install these lines.

Plaintiff claims that defendant's construction of these lines and subsequent provision of water service to customers along the disputed roads violate its rights under a federal statute, 7 U.S.C. § 1926(b), which extends certain protections to rural water districts, like the plaintiff, that have received loans from the USDA. Plaintiff alleges that its indebtedness to the USDA gave rise to an exclusive right to provide water service to customers in the disputed territory. Thus, plaintiff argues, defendant's extension of water service into those areas violates that exclusive right.

Plaintiff requests both an injunction prohibiting defendant from signing up any more customers in the disputed area and an order requiring defendant to forfeit its installed water lines to plaintiff for reasonable reimbursement of costs.

Defendant alleges that § 1926(b) does not apply to plaintiff and therefore does not provide plaintiff exclusive rights in the disputed area. Defendant argues that because plaintiff became indebted to the USDA on August 23, 2002, which was after defendant completed construction of its water lines in the disputed area, § 1926(b) does not apply to grant plaintiff the exclu-

sive right it asserts. Additionally, defendant alleges that plaintiff had not provided or made service available in the disputed area, as is required for plaintiff to assert rights under § 1926(b). Defendant, therefore, requests an injunction stopping plaintiff from constructing water lines in areas of Erie County where defendant already provides water service.

I previously granted defendant's motion for preliminary injunction prohibiting plaintiff from installing any additional water lines or providing new water service in the disputed areas where there is existing water service provided by defendant. Defendant asks that this order be made permanent.

## Discussion

Plaintiff bases its claim to an exclusive right to provide water service in the disputed territory on 7 U.S.C. § 1926(b), which states: "The service provided or made available through any [rural water district] association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body." The Sixth Circuit has explained that § 1926(b) grants exclusive rights to rural water districts, like plaintiff, only when the party asserting such protection can establish: "(1) it is an 'association' within the meaning of the Act; (2) it has a qualifying outstanding Farmers Home Administration loan obligation; and (3) it has provided or made service available in the disputed area." *Lexington–South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 234 (6th Cir.1996). It is undisputed that plaintiff is an "association" for the purposes of § 1926(b) with an outstanding qualifying USDA loan.

If a rural water district association does not already have service in existence in the disputed area, it must 1) have water lines within or adjacent to the disputed territory and 2) have a legal right to provide service to that territory to claim exclusivity under § 1926(b). *See Le–Ax Water Dist. v. City of Athens*, 346 F.3d 701, 706 (6th Cir.2003) (citing *Lexington–South Elkhorn*, 93 F.3d at 235–36); *see also Scioto County Reg'l Water Dist. v. Scioto Water, Inc.*, 1997 WL 706478 at *3 (S.D.Ohio 1997) (because water district did not have water lines in or adjacent to the disputed area, it could not prevail on its § 1926(b) claim).

Plaintiff alleges that defendant's action of signing up new customers (not its construction of water lines) triggers plaintiff's § 1926(b) protection. Because sixteen of the twenty customers defendant serves with the disputed water lines were signed up after plaintiff received its first disbursement of money from its USDA loan, plaintiff argues that those acts violate § 1926(b).

Defendant asserts that construction of lines is the determinative event. If so, plaintiff cannot meet the second *Lexington–South Elkhorn* requirement because defendant had finished installing its lines about a month before plaintiff drew any money on its loan.

To support its argument, plaintiff cites the Sixth Circuit's explanation in *Lexington–South Elkhorn* that "water lines must either be *within or adjacent to the property* claimed to be protected by Section 1926(b) prior to the time an allegedly encroaching association *begins providing service* in order to be eligible for Section 1926(b) protection." *Id.* at 237 (emphasis added). The party claiming § 1926(b) protection must show that it either had water lines installed in or adjacent to the disputed areas when the allegedly infringing acts occurred.

Regardless of whether defendant's installation of water lines or its provision of water service to customers was the alleged

infringing act, plaintiff has only shown that it has lines in areas surrounding the disputed territory, not within or adjacent to the specific areas at issue. To be sure, plaintiff has shown that it plans to provide service in the disputed areas, and claims it could install lines in those areas within a few days. But the desire, even when coupled with the ability to install lines, is simply not sufficient to come within § 1926(b). The requirement is retrospective, not prospective.

Plaintiff cannot meet this requirement because it cannot show that it had lines within or adjacent to the disputed territory prior to the time defendant began providing service. Defendant's lines began operating in July 2002, while plaintiff did not install lines until February 2003.

Plaintiff cannot meet the second prong—that it has a legal right to serve the area—either. Though plaintiff has the authority under state law to provide service in the area, this is only half the battle. Plaintiff has not obtained the required easements necessary to install lines under 7 C.F.R. 1780.44(g)(1) and faces significant legal hurdles before it may do so.

Plaintiff contends it may obtain the easements under Ohio's "quick take" provision, O.R.C. § 163.06(A). This option is not, however, available to the plaintiff: this is not a case where "war or other public exigency[ ] requir[es] ... immediate seizure" as provided by the Revised Code. *Worthington v. Carskadon,* 18 Ohio St.2d 222, 224, 249 N.E.2d 38 (1969).

Plaintiff is not protected by 7 U.S.C. § 1926(b) because it was not indebted to the USDA until after Erie County installed lines, which is the determinative date for § 1926(b) protection. *See Village of Grafton v. Rural Lorain County Water Auth.,* 316 F.Supp.2d 568, 579 (N.D.Ohio 2004).

Because plaintiff's authority to provide service terminated before it incurred indebtedness to the USDA and before it could make a viable claim under 1926(b), plaintiff cannot prevail. Plaintiff's capability to provide the service, therefore, is irrelevant. *See Rural Water Sys. No. 1 v. City of Sioux Ctr.,* 29 F.Supp.2d 975, 989 (N.D.Iowa 1998) (" 'Proximity of pipelines or pipes in the ground' cannot 'trump' loss of legal right to serve.")

Defendant argues that, because both parties have statutory authority to provide water service to the disputed area, the dispute should be resolved through a balancing test articulated by the Ohio Supreme Court in *Delaware County Bd. of Commrs. v. City of Columbus,* 26 Ohio St.3d 179, 181, 497 N.E.2d 1112 (1986):

> "The police power and the power of local self-government are constitutional grants of authority equal in dignity." ... In such instance, "the judiciary must ultimately determine the facts in such controversies, balance the rights of the county against those of the municipality and endeavor to protect the respective interests of each."

*Id.* (quoting *City of Columbus v. Teater,* 53 Ohio St.2d 253, 257, 374 N.E.2d 154 (1978)).

As in my previous order, I am persuaded that the balancing test defendant advocates is the proper state law basis for resolving this dispute. I further am persuaded that defendant succeeds on the test. The county made substantial investments in planning, EPA approvals, construction, and service. It also provides service to at least twenty customers. Defendant, simply, has invested more and done more with its plans and the disputed area.

## Conclusion

Because Plaintiff Northern Ohio Rural Water is not protected by § 1926(b) and the state balancing test favors defendant Erie County Board of Commissioners, plaintiff succeeds on both federal and state grounds.

In light of the foregoing, it is hereby

ORDERED THAT

1. Defendant Erie County Board of Commissioners' motion for a permanent injunction be, and the same hereby is granted; accordingly, it is further ordered that plaintiff Northern Ohio Rural Water, its successors and assigns be, and they hereby are permanently enjoined from installing any additional water lines or providing new water service in the disputed areas encompassed by this litigation where there is existing water service provided by defendant.

2. Defendant Erie County Board of Commissioners' motion for summary judgment be, and the same hereby is granted;

3. Defendant Erie County Board of Commissioners' motion for declaratory judgment be, and the same hereby is granted; and

4. Plaintiff Northern Ohio Rural Water's motion for summary judgment be, and the same hereby is, denied.

So ordered.