[Cite as *Columbia Gas of Ohio, Inc. v. Holloway*, 2023-Ohio-4257.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# UNION COUNTY

COLUMBIA GAS OF OHIO, INC.,

    PETITIONER-APPELLEE,

**CASE NO. 14-23-18**

v.

JOHN L. HOLLOWAY, JR.,

    RESPONDENT-APPELLANT.

**O P I N I O N**

---

COLUMBIA GAS OF OHIO, INC.,

    PETITIONER-APPELLEE,

**CASE NO. 14-23-19**

v.

JEREMY W. TILLER, ET AL.,

    RESPONDENTS-APPELLANTS.

**O P I N I O N**

---

COLUMBIA GAS OF OHIO, INC.,

    PEITIONER-APPELLEE,

**CASE NO. 14-23-20**

v.

TERESA PERRY, ET AL.,

    RESPONDENT-APPELLANTS.

**O P I N I O N**

**COLUMBIA GAS OF OHIO, INC.**

        **CASE NO. 14-23-21**

     **PETITIONER-APPELLEE**

  **v.**

**SCHRADER 10944, LLC,**        **O P I N I O N**

     **RESONDENT-APPELLANT.**

**COLUMBIA GAS OF OHIO, INC.,**

        **CASE NO. 14-23-22**

     **PETITIONER-APPELLEE,**

  **v.**

**OLIVE K. FLEMING,**        **O P I N I O N**

     **RESPONDENT-APPELLANT.**

**COLUMBIA GAS OF OHIO, INC.,**

        **CASE NO. 14-23-23**

     **PETITIONER-APPELLEE,**

  **v.**

**JOHN H. PUGH, ET AL.,**        **O P I N I O N**

     **RESPONDENTS-APPELLANTS.**

| | |
|---|---|
| **COLUMBIA GAS OF OHIO, INC.,** | **CASE NO. 14-23-24** |
| **PETITIONER-APPELLEE,** | |
| **v.** | |
| **GB FAMILY LIMITED PARTNERSHIP,** | **O P I N I O N** |
| **RESPONDENT-APPELLANT.** | |

| | |
|---|---|
| **COLUMBIA GAS OF OHIO, INC.,** | **CASE NO. 14-23-25** |
| **PETITIONER-APPELLEE,** | |
| **v.** | |
| **RONALD E. KUHN, ET AL.,** | **O P I N I O N** |
| **RESPONDENTS-APPELLANTS.** | |

**Appeals from Union County Common Pleas Court**
**Trial Court Nos. 2022-CV-0135, 2022-CV-0138, 2022-CV-0134, 2022-CV-0140, 2022-CV-0131, 2022-CV-0142, 2022-CV-0129 and 2022-CV-0139**

**Judgments Affirmed**

**Date of Decision: November 27, 2023**

**APPEARANCES:**

*Thomas H. Fusonie* **for Appellants**

*Adam C. Smith* **for Appellee**

Case Nos. 14-23-18, 14-23-19, 14-23-20, 14-23-21
14-23-22, 14-23-23, 14-23-24, 14-23-25

*Ryan P. Sherman* **Counsel for Amici Curiae Ohio Power Company and AEP Ohio Transmission Company, INC in support of Appellee Columbia Gas of Ohio, Inc.**

**WALDICK, J.**

**{¶1}** Respondents-appellants, GB Limited Partnership, Olive K. Fleming, Teresa Perry, et al., John L. Holloway, Jr., Jeremy W. Tiller, et al., Ronald E. Kuhn, et al., Schrader 10944, LLC, John Pugh, et al., (collectively, "respondents"), bring these appeals from the April 19, 2023, judgments of the Union County Common Pleas Court determining that petitioner-appellee, Columbia Gas of Ohio, Inc., ("Columbia Gas"), established the necessity of easement appropriations for a natural gas pipeline. On appeal, respondents argue that the trial court erred by determining that Columbia Gas established the necessity of the appropriations and that the trial court failed to make required, specific findings concerning the necessity of the individually challenged easement terms. For the reasons that follow, we affirm the judgments of the trial court.

*Background*

**{¶2}** Columbia Gas is a natural gas distribution company that operates a public utility subject to regulation by the State of Ohio. This case concerns Columbia Gas appropriating easement rights on respondents' properties in order to

construct and operate a subsurface natural gas pipeline.[1] The specific pipeline constitutes "Phase VII" of the "Northern Columbus Loop," and will supply natural gas to Union, Delaware, and Franklin Counties to meet rising energy demands.[2] The pipeline was approved by the Ohio Power Siting Board ("OPSB") after various parties, including the Union County Commissioners, recommended the project's approval.[3]

{¶3} On August 5, 2022, Columbia Gas filed "Verified Petition[s] for Appropriation of Easement Rights" related to respondents' properties.[4] The easements Columbia Gas seeks to acquire on respondents' properties are essentially the same: "the right to lay, operate, maintain, repair, replace, alter, relocate, and remove a single natural gas pipeline, no greater than 24 inches in diameter, with a maximum allowable operating pressure of 720 psig, together with valves and appurtenances * * *, subsurface within a 50-foot-wide permanent easement[.]"[5] In addition, Columbia Gas seeks to acquire a "50-foot-wide temporary easement * * *

---

[1] Columbia Gas asserts that the pipeline runs 16 miles through 115 parcels of land and that respondents own 10 of the subject parcels. Columbia Gas asserts that respondents are the only landowners challenging the easements in Union County.

[2] According to Columbia Gas, this is the final phase of the pipeline project.

[3] This Court and the trial court have addressed prior cases involving Columbia Gas and pipeline projects. *See Columbia Gas v. Bailey*, 3d Dist. Union Nos. 14-22-13, 14-22-14, 2023-Ohio-1245 (specifically dealing with the Northern Columbus Loop Pipeline); *Columbia Gas v. Phelps*, 3d Dist. Union No. 14-22-07, 2022-Ohio-2540 (dealing with the "Marysville Connector").

[4] In the petitions, Columbia Gas asserted that the route of the pipeline project was selected after "evaluating approximately 37,800 acres of land," that the "route parallels property lines and existing utility easements as much as practicable," that the route minimized tree clearing, and that the route avoided "six wetlands and four streams."

[5] The pipeline on one property will be smaller.

for the purpose of initial construction of the Pipeline and restoration of the Property resulting from the construction of the Pipeline."[6] The rights would be transferable to Columbia Gas's "successors and assigns."

**{¶4}** In the appropriation petitions Columbia Gas asserted, *inter alia*, that it had provided respondents with Notices of Intent to Acquire and Written Good Faith Offers based on appraisals. Columbia Gas asserted that the easements were necessary and reasonably convenient for public use. Because Columbia Gas and respondents had been unable to agree on the easement rights and/or compensation, Columbia Gas asserted the appropriation action was necessary.

**{¶5}** Respondents filed "Verified Answer[s]" asserting, *inter alia*, that the appropriations were not necessary in that they sought easement rights in excess of those necessary for the project.[7] Respondents specifically argued that the proposed easements would improperly provide "unfettered blanket assignability rights," that the proposed easements would improperly provide Columbia Gas unnecessary rights to maintain its pipeline, that the proposed 36-month temporary easements for construction of the pipeline were too indefinite, and that the easements improperly allowed Columbia Gas to construct "unspecified 'appurtenances and valves'" on respondents' property. Respondents sought a hearing on the necessity of the easements and their terms.

---

[6] The temporary easement for one property owner was smaller since the pipeline being installed was smaller.
[7] Respondents are represented collectively by the same law firm.

{¶6} On February 10, 2023, the trial court held a consolidated "necessity" hearing and heard testimony from Columbia Gas employees attesting to the necessity of the easements. The parties filed written closing arguments containing proposed findings of fact and conclusions of law.

{¶7} On April 19, 2023 the trial court filed a judgment entry determining that Columbia Gas was entitled to a rebuttable presumption of necessity due to the evidence presented, that respondents did not rebut the presumption, that the appropriations were necessary, and that the appropriations were not excessive.[8] The trial court thus set the matter to proceed to compensation hearings. Respondents now appeal the trial court's judgments, asserting the following assignments of error for our review.

**First Assignment of Error**

**The Trial Court erred when it found that Columbia Gas of Ohio, Inc. showed the necessity of the underlying appropriations, that the evidence at the necessity hearing did not rebut the presumption under R.C. 163.09(B)(1)(b), and that the proposed easements do not constitute an excessive taking.**

**Second Assignment of Error**

**The Trial Court erred when it failed to make specific findings concerning the necessity of the easements at issue pursuant to *Ohio Power Co. v. Burns*, Slip Opinion No. 2022-Ohio-4713.**

---

[8] The trial court filed a nunc pro tunc entry on May 3, 2023.

Case Nos. 14-23-18, 14-23-19, 14-23-20, 14-23-21
14-23-22, 14-23-23, 14-23-24, 14-23-25

*First Assignment of Error*

**{¶8}** In their first assignment of error, respondents argue that the trial court erred by determining that Columbia Gas established the necessity of the underlying appropriations. Respondents contend, *inter alia*, that numerous provisions in the easements are undefined or overbroad.

Standard of Review

**{¶9}** The Supreme Court of Ohio has indicated that a trial court's review of easement terms in an appropriation action should be upheld when they are supported by some competent credible evidence. *Ohio Power Company v. Burns*, 171 Ohio St.3d 84, 2022-Ohio-4713, ¶ 35.[9] When a trial court's decision regarding a petition for appropriation rights is supported by some competent credible evidence it will not be reversed as against the manifest weight of the evidence. *Columbia Gas v. Bailey*, 3d Dist. Union Nos. 14-22-13, 14-22-14, 2023-Ohio-1245, ¶ 60.

Relevant Authority

**{¶10}** When an owner files an answer to an appropriation petition under R.C. 163.08 asserting specific denials to the appropriation petition, a trial court is

---

[9] The standard of review is actually disputed between the parties. Respondents argue that we should apply a de novo standard of review, citing our decision in *Phelps*, where we stated that the interpretation of a statute is a matter of law that we review de novo. *Phelps* at ¶ 10. In *Phelps*, we referred to our decision in *ODNR v. Thomas*, 3d Dist. Mercer No. 10-16-05, 2016-Ohio-8406, wherein we stated that a trial court's decision on the *extent of the take* is reviewed de novo. However, the extent of the take is not at issue here in the same way it was in *Thomas* as the appropriation is specifically defined with regard to the land acquired. Respondents are challenging the terms of the appropriation, and the Supreme Court of Ohio indicated in *Burns* that a deferential standard of review is appropriate under such circumstances, so we will apply that standard here.

required to hold a hearing on the matter. At the hearing, which is governed by R.C. 163.09, a trial court determines "'whether the entire appropriation was necessary; specifically whether the amount taken was excessive.'" *Columbia Gas v. Phelps*, 3d Dist. Union No. 14-22-07, 2022-Ohio-2540, ¶ 23, quoting *Octa v. Octa Retail*, 12th Dist. Fayette No. CA2007-04-015, 2008-Ohio-4505, ¶ 43. Importantly, the necessity required for the appropriation does not require a showing of absolute necessity, but rather that which is reasonably convenient or useful to the public. *Columbia Gas v. Bailey*, 3d Dist. Union Nos. 14-22-13, 14-22-14, 2023-Ohio-1245, ¶ 68.

**{¶11}** Generally, when a landowner challenges the necessity of an appropriation sought by an agency, the burden of proof to establish the necessity of the appropriation is "upon the agency by a preponderance of the evidence[.]" R.C. 163.09(B)(1).[10] However, "[t]he presentation by a public utility or common carrier of evidence of the necessity for the appropriation creates a rebuttable presumption of the necessity for the appropriation." *Id.* at (B)(1)(b)

**{¶12}** Stated differently, where an "agency" presents evidence of the necessity of an appropriation, the agency is entitled to a rebuttable presumption of necessity under R.C. 163.09(B)(1)(b), creating a prima facie showing of necessity.

---

[10] Agency is defined in 163.01 and it includes private agencies. Private agencies such as Columbia Gas are permitted to appropriate property. *See Burns*, 171 Ohio St.3d 84, 2022-Ohio-4713, ¶ 1.

*Burns* at ¶ 32. The presumption imposes upon the *landowners* the burden of going forward with evidence to rebut or meet the presumption of necessity. *Id*.

Evidence Presented at the Necessity Hearing

**{¶13}** At the necessity hearing in this case, Columbia Gas presented the testimony of its Director of Regulatory Policy. She testified that the pipeline Columbia Gas intended to build served two primary purposes: operational reliability for current customers and serving growth to new customers.

**{¶14}** As to operational reliability, the Director explained that the project

> provides [an] additional source of feed for our west side of Columbus. The west side, itself, is a constrained area specifically with the feed coming from the southeast at our Rome Hilliard Station. This will permit an additional feed of natural gas to that system traveling from New Albany which is a different interstate pipeline system.

(Tr. at 32). Regarding growth, the Director explained that there had been a lot of development in Delaware and Union Counties, and the pipeline would help serve that area by interconnecting with the Marysville Connector, providing an additional feed to the Marysville market.

**{¶15}** The Director testified that the pipeline had been approved by the OPSB, that only one pipeline could be installed pursuant to the easements, that the pipeline had to transport natural gas, that the pipeline was limited in size, and that the pipeline was limited in pressure. The Director also testified that acquiring the

-10-

right to assign the easement was important because of, *inter alia*, corporate restructuring.

{¶16} Columbia Gas also presented the testimony of the pipeline's Project Manager. The Project Manager testified as to why the permanent easement needed to be 50 feet and he testified that the additional temporary easement was necessary to support construction of the pipeline and restoration of the property to its original state. The Project Manager testified that the temporary easement would last 36 months or until the pipeline was completed and the property restored. He testified that the start date for construction could not yet be determined because Columbia Gas had yet to acquire all the easements.

{¶17} The Project Manager testified that the pipeline, valves, and appurtenances would all be subsurface. He also testified that it was not possible to list in the easements all of the potential valves and appurtenances that could be installed because the installation would depend in part on the character of the land and in part on potential changes to regulatory standards.

{¶18} Based on the evidence presented, the trial court determined that Columbia Gas was entitled to a rebuttable presumption of necessity pursuant to R.C. 163.09(B)(1)(b). Thus Columbia Gas had established a prima facie case of necessity of the easements and their terms, and the respondents had the burden of going forward with evidence to rebut the presumption. The trial court determined that

respondents did not meet their burden and that the easements did not constitute an excessive taking, ruling in favor of Columbia Gas in a written entry addressing respondents' arguments.

Analysis

{¶19} On appeal, respondents largely renew all of the specific challenges they made to the easements and the easements' terms at the trial court level. We will address each argument in turn.

{¶20} Respondents first contend that the trial court erred because Columbia Gas failed to meet its burden of proving necessity of the appropriations. However, Columbia Gas presented evidence that the project had been approved by the OPSB and that the pipeline had multiple purposes that would be beneficial to residents of, *inter alia*, Union County. Thus there was some competent credible evidence to support the trial court's finding regarding necessity, and respondents arguments on this issue are not well-taken.

{¶21} Respondents next contend that the appropriations sought were overbroad because they did not specifically define the "natural gas" that was to be transmitted through the pipeline. Respondents cite the fact that the Director of Regulatory Policy for Columbia Gas testified that there were multiple types of natural gases that technically existed.

{¶22} However, the Director also testified that the Public Utilities Commission of Ohio actually does not define "natural gas," but Columbia Gas's "tariff" does. The Director testified that the "natural gas" that would be transported would meet the quality contained in their "tariff" standards. Further, the easement is clear in that the only substance that can be transported in the pipeline is "natural gas."

{¶23} The trial court reviewed the evidence and determined that the lack of definition of "natural gas" did not rebut the presumption of necessity, particularly given that the pipeline was limited to being a "single natural gas pipeline" with a specific diameter and a maximum pressure.[11] We agree with the trial court. Thus this argument is not well-taken.

{¶24} Respondents next challenge the trial court's judgment by arguing that the easements would place "impermissibly vague restrictions on the use of [respondents] properties." This challenge is related to the following provision in the easements:

> Grantors shall not allow the existence of any obstructions, or in any way impair the ability of the Grantee to exercise the Grantee's rights granted herein, within the Permanent Easement Area and Temporary Easement Area.

---

[11] Given the specifics related to the pipeline's parameters contained in the easement and given that only "natural gas" can be transported in the pipeline, we do not agree with respondents that the Director's testimony that "it's just a pipeline easement without any specificity" is somehow "fatal" to the easements here, particularly given that the Director gave that particular response after being asked whether the pipeline would be used only for, *inter alia*, transmission or distribution. Thus the Director's answer is taken out-of-context by respondents and the trial court's finding that respondents did not rebut the presumption afforded to Columbia Gas is supported by the record.

> The Pipeline shall be buried below plow depth so as not to interfere with the present use of the land.

{¶25} Respondents argue that the language of the easements grants Columbia Gas "unconstrained latitude to arbitrarily restrict [respondents] use and enjoyment of their properties." (Appt.'s Br. at 10). Respondents contend that Columbia Gas effectively should list all the potential obstructions that were impermissible so the respondents could know how they could use their land.

{¶26} The trial court determined that the lack of definition of "obstruction or impairment" did not equate to an excessive taking considering the words could be defined by their normal usage. We agree with the trial court, particularly given that the very next line in the easement provides some key context, namely that the pipeline should be buried so as to not interfere with the present use of the land. The land, primarily agricultural according to the filings, will thus still be usable as it is.

{¶27} Furthermore, the Project Manager for Columbia Gas testified that it would be impossible to list every conceivable obstruction or impairment in an easement. Moreover, he testified that Columbia Gas reviews possible obstructions to a pipeline on a case-by-case basis to allow landowners the greatest latitude with their land. Finally, as Columbia Gas notes, the law already generally establishes that "the owner of the servient estate may not interfere with the dominant estate's use and enjoyment of the easement." *Ohio Power Co. v. Ogle*, 4th Dist. Hocking Nos.

10CA13, 10AP13, 2011-Ohio-3903, ¶ 15. As the testimony provides some competent credible evidence supporting the trial court's determination, we find no error here, and respondents' argument is not well-taken.

{¶28} Respondents next argue that the easements are impermissibly vague by granting Columbia Gas "blanket assignability rights." In reviewing the matter, we emphasize that the Director of Regulatory Policy testified that assignability of the easement rights was important because companies change, split, or are sold. Regardless, the Director testified that while the rights in the easements technically could be assigned to anyone, in reality only a regulated natural gas company could lawfully operate the pipeline placed on respondents' properties. Based on the evidence presented, we find that there is some competent credible evidence to support the trial court's determination on this issue.[12] Thus respondents' arguments regarding assignability of rights are not well-taken.

{¶29} Respondents next argue that the temporary easements are indefinite and contain no start date, rendering them excessive. Notably, Columbia Gas has modified the language of their temporary easements providing stricter timelines after we rejected a "perpetual" temporary easement in *Columbia Gas v. Phelps*, 3d Dist. No. 14-22-07, 2022-Ohio-2540, ¶ 35-39. Moreover, as the trial court

---

[12] The trial court's original judgment entry was corrected in its nunc pro tunc entry to indicate that the assignability issue does *not* demonstrate an excessive taking to overcome the rebuttable presumption of necessity. It is clear from the surrounding context of the trial court's original entry that the word "not" was intended to be included in the original entry.

determined, the temporary easements end either 36 months after the commencement of construction or on the completion of construction and restoration of the premises, whichever occurs *first*. A precise start date could not be listed by Columbia Gas because the easements had not all been acquired. We find no error with the trial court's determination that the easement terms are not overbroad or that respondents failed to rebut the presumption here. As the evidence supports the trial court's determination, respondents' argument is not well-taken.

{¶30} Finally, respondents argue that the easements impermissibly provide Columbia Gas a "blanket" right to construct "undefined" valves and appurtenances on their properties. However, testimony indicated that all valves and appurtenances would be subsurface, thus it is not clear how this would cause any impact to the respondents. At the very least, respondents did not meet their burden to rebut the presumption.

{¶31} In addition, testimony indicated that it was impossible to predict what valves or appurtenances would be necessary for each property until the ground had been removed. Furthermore, testimony indicated it was impossible to predict future regulations regarding valves and appurtenances. After reviewing the testimony, we find that the trial court's rejection of respondents' arguments is supported by some competent credible evidence and respondents' challenge to the "undefined" valves and appurtenances in the easements is not well-taken.

**{¶32}** In sum, the trial court rejected all of respondents' challenges to the easement terms and determined that the appropriations were necessary. The record supports the trial court's findings and respondents' challenges to the trial court's judgment are not well-taken.[13] Therefore, the first assignment of error is overruled.

*Second Assignment of Error*

**{¶33}** In their second assignment of error, respondents argue that the trial court erred by failing to make "specific findings concerning the necessity of the easements at issue." (Appt.'s Br. at 16). Respondents emphasize that in *Ohio Power Company v. Burns*, 171 Ohio St.3d 84, 2022-Ohio-4713, ¶ 33, the Supreme Court of Ohio determined that a blanket finding regarding challenges to easement terms was improper. Rather, a trial court needed to analyze the challenged easement terms separately. Respondents contend that the trial court did not conduct a separate, specific review here.

**{¶34}** Contrary to respondents' arguments, a simple review of the trial court's judgment entry entirely undermines their claim. The trial court explicitly listed the five specific denials made by respondents in its judgment entry and individually addressed each denial. There was no "blanket finding" here of the type rejected in *Burns*.

---

[13] Legal authority cited by respondents not directly addressed herein has been considered and found to either be distinguishable or to have little relevance. For example, respondents rely on *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, ¶ 1 but *Norwood* dealt with a municipality "taking [] an individual's property by eminent domain and transferring the property to a private entity for redevelopment."

**{¶35}** While respondents may have preferred a more detailed analysis, a trial court under *Burns* is only required to make specific findings concerning the challenged terms, and that was specifically done here. *Burns* at ¶ 35. Each denial was mentioned, summarized, and rejected. The trial court also made the specific finding of necessity. Therefore, respondents' second assignment of error is overruled.

*Conclusion*

**{¶36}** Having found no error prejudicial to respondents in the particulars assigned and argued, the assignments of error are overruled and the judgments of the Union County Common Pleas Court are affirmed.

***Judgments Affirmed***

**WILLAMOWSKI and ZIMMERMAN J.J., concur.**

**/eks**