[Cite as *Algoma Group, A Gen. Partnership v. Marchbanks*, 2024-Ohio-2342.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The Algoma Group,<br>A General Partnership et al., | : | |
| | : | |
| Plaintiffs-Appellants, | | |
| | : | No. 23AP-535 |
| v. | | (C.P.C. No. 21CV-7350) |
| | : | |
| Jack Marchbanks, Director | | (REGULAR CALENDAR) |
| Ohio Department of Transportation et al., | : | |
| | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on June 18, 2024

**On brief:** *Goldman Braunstein Stahler Kenter LLP*, and *Aaron E. Kenter*, for appellants. **Argued:** *Aaron E. Kenter*.

**On brief:** *Dave Yost*, Attorney General, *William J. Cole*, *Corinna V. Efkeman*, and *Justine A. Allen*, for appellees. **Argued:** *William J. Cole*.

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} Plaintiffs-appellants, The Algoma Group, John W. Holcomb, and Kelly S. James, appeal from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion filed by defendants-appellees, Ohio Department of Transportation and Director Jack Marchbanks (collectively "ODOT"). For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} Appellants are owners of real property bisected by State Route 315, less than a half mile south of the intersection with State Route 23. In this area, the Olentangy River runs parallel to State Route 315, sitting just east of the highway. The Algoma Group owns

Parcel 62-WD, comprised of 0.372 acres. ODOT presently holds a permanent highway easement in 0.365 acres of Parcel 62-WD, which is occupied by State Route 315, leaving 0.007 acres unencumbered. Holcomb and James own Parcel 64-WD, comprised of 0.911 acres. ODOT holds a permanent easement in 0.687 acres of Parcel 64-WD, which is occupied by State Route 315, with the remaining 0.224 acres unencumbered. Holcomb and James also own 64-T, comprised of 0.029 acres and subject to ODOT's temporary easement.

{¶ 3} ODOT initiated appropriation proceedings on April 15, 2021 in the Delaware County Court of Common Pleas to acquire title to Parcels 62-WD and 64-WD/64-T in fee simple. According to the petitions for appropriation, which included "[f]indings, [d]eclarations, & [r]esolutions" submitted by Director Marchbanks, "it is necessary for the public convenience and welfare to acquire [the properties at issue] for highway purposes * * * to make, construct, repair or improve State Route 315" and, again, "it [is] necessary to appropriate the property * * * for the purpose of making, constructing or improving the above- mentioned highway which shall be open to the public, without charge or one of the other statutory purposes for which the Director of Transportation may acquire property * * * such as * * * those purposes enumerated in [R.C.] 5501.31 and [R.C.] 5519.01." (Compl., Exs. 5, 6.) Director Marchbanks determined that $406 is the fair market value of parcel 62-WD and $8,762 is the fair market value of parcels 64-WD/64-T and declared he had been unable to agree on a conveyance with any owner prior to instituting the appropriation action.

{¶ 4} In response to ODOT's petitions for appropriation, one appellant filed an answer asserting defenses challenging the right and necessity of the appropriation. The Delaware common pleas court struck those defenses after determining that, pursuant to R.C. 163.08, landowners may not challenge those defenses within the statutory constraints of an appropriation action when the property is being taken for the construction or repair of a public road. (Ex. 1 to Dec. 12, 2021 Mot. to Dismiss, citing *Dublin v. River Park Group, L.L.C.*, 10th Dist. No. 18AP-607, 2019-Ohio-1790, ¶ 18, *Cleveland v. Brook Park*, 103 Ohio App.3d 275, 280-81 (8th Dist.1995), *Wray v. Bartley*, 4th Dist. No. 94CA533 (June 7, 1995).) Appellants appealed that judgment and, in *Marchbanks v. Algoma Group*, 5th Dist.

No. 21 CAE 10 0053, 2022-Ohio-1385, the Fifth District Court of Appeals dismissed the appeal after determining it lacked jurisdiction.

{¶ 5} Appellants obtained a stay of the Delaware County appropriation proceedings and filed a complaint against ODOT on November 22, 2021 in the Franklin County court of common pleas, asserting jurisdiction to sue ODOT pursuant to R.C. 5501.22. Appellants pursued declaratory judgment, injunctive relief, and a 42 U.S.C. 1983 civil action for deprivation of constitutional rights and associated damages. They asked for judicial declarations that: ODOT's offer to purchase the properties failed to comply with R.C. 163.04 and 163.041 by not providing appraisals based on "before * * * and after-appropriation values of the properties"; ODOT's appropriations are neither necessary nor for a public use; and, as a result of either transgression, ODOT did not have a right to commence proceedings to appropriate the properties. (Compl. at 15.)

{¶ 6} ODOT filed a motion to dismiss contending appellants failed to state a claim on which relief can be granted. The trial court denied the motion in part related to appellants' declaratory judgment counts and the 42 U.S.C. 1983 claim against Director Marchbanks and granted the motion in part related to the 42 U.S.C. 1983 claim against ODOT.

{¶ 7} Following a period of discovery, ODOT moved for summary judgment on "all non-dismissed claims." (May 15, 2023 Mot. for Summ. Jgmt. at 1.) In part pertinent to this appeal, ODOT argued summary judgment is appropriate as to appellants' claims based on non-compliance with R.C. 163.04, because, as a matter of law, "a before-and after-taking" appraisal is not required to file an appropriation petition. (Mot. for Summ. Jgmt. at 10.) ODOT further argued it is entitled to summary judgment because the pleadings, affidavits, depositions, and discovery responses show there is no genuine issue of material fact that ODOT needs to appropriate portions of appellants' properties for a project to repair and improve a 1.1 mile portion of State Route 315, a toll-free public road. ODOT explained that since the challenged appropriations are for repairing and improving a public road, it is presumptively for public use as a matter of law, and that the pleadings, affidavits, expert reports, discovery responses and deposition testimony submitted show there is no genuine issue of material fact that the appropriation of appellants' properties is necessary and for public use.

{¶ 8} In addition to filing a memorandum contra ODOT's motion for summary judgment, appellants filed their own motions for partial summary judgment on May 19 and 25, 2023. Appellants argued the appropriations are jurisdictionally defective due to ODOT's failure to fulfill the statutory requirement of providing sufficient appraisals prior to commencing the appropriations, and that the appropriations are neither necessary nor for a public use. Therefore, appellants asked the trial court to enjoin the appropriations and declare them invalid.

{¶ 9} On August 10, 2023, the trial court granted ODOT's motion for summary judgment, denied appellants' motion for partial summary judgment, and dismissed the case. Regarding the issue of "public use," the trial court determined that when private property is being taken for a road, the taking is legally presumed for public use, and that in this case the property at issue is being taken "for a public road to improve drainage in order to stop water damage to the roadway," remarking appellants "do not really dispute that the taking is for a public purpose." (Aug. 10, 2023 Decision at 3.)

{¶ 10} Concerning whether the appropriation is "necessary," the trial court determined the taking is necessary to protect the public roadway from damage which could create a hazard for motorists. In doing so, the trial court, citing to *Atwood Regional Water & Sewer Dist. v. Smith*, 5th Dist. No. 2016 AP 05 0026, 2017-Ohio-206, ¶ 33, stated "[t]he burden is on [appellants] to prove the appropriation is unnecessary and that ODOT abused its discretion in determining the appropriation is necessary" and determined appellants "have not only failed to rebut the presumption, but have failed to offer evidence contradicting [ODOT's] experts in any material way." (Decision at 4.) The trial court cited to both appellants' expert and Civ.R. 30(B)(5) designee as well as ODOT's expert testimony in supporting summary judgment in favor of ODOT on the public use and necessity issues.

{¶ 11} Next, concerning the appraisal issue, the trial court concluded R.C. 163.04 did not require a valuation of the residue "before and after" the taking as a prerequisite for ODOT to file a petition for appropriation. (Decision at 5.) Instead, the "before and after" valuation of the residue related to the measure of damages. (Decision at 6.) Finally, as to the alleged constitutional claims, the trial court determined qualified immunity shields Director Marchbanks from the litigation and, regardless, those claims independently failed.

## II. Assignments of Error

{¶ 12} Appellants appeal and assign the following five assignments of error for our review:

> I. The trial court erred to the material prejudice of Plaintiffs-Appellants by granting Defendants-Appellees' Motion for Summary Judgment as to Counts II and III of Plaintiffs-Appellants' Complaint by failing to give effect to R.C. 163.021(A) and by improperly requiring that Plaintiffs-Appellants "prove the appropriation is unnecessary and that ODOT abused its discretion in determining the appropriation is necessary."
>
> II. The trial court erred to the material prejudice of Plaintiffs-Appellants by granting Defendants-Appellees' Motion for Summary Judgment as to Counts II and III of Plaintiffs-Appellants' Complaint after improperly applying evidentiary presumptions in favor of Defendants-Appellees.
>
> III. The trial court erred to the material prejudice of Plaintiffs-Appellants by granting Defendants-Appellees' Motion for Summary Judgment as to Counts II and III of Plaintiffs-Appellants' Complaint despite failing entirely to address Plaintiffs-Appellants' claims relating to Defendants-Appellees' appropriation of parcels 64-T, 62-WD -PRO, 64-WD – PRO, the property rights sought in parcels 62-WD and 64-WD, and the area of property sought in parcels 62-WD and 64-WD.
>
> IV. The trial court erred to the material prejudice of Plaintiffs-Appellants by denying Plaintiffs-Appellants' Motion for Partial Summary Judgment as to Counts I and III of their Complaint.
>
> V. The trial court erred to the material prejudice of Plaintiffs-Appellants by denying Plaintiffs-Appellants' Motion for Partial Summary Judgment as to Counts II and III of their Complaint.

## III. Analysis

{¶ 13} Appellants' assignments of error collectively challenge various aspects of the trial court's decision to grant ODOT's motion for summary judgment. Appellate review of summary judgment is de novo. *MacDonald v. Authentic Invests., L.L.C.*, 10th Dist. No. 15AP-801, 2016-Ohio-4640, ¶ 22. "Under the de novo standard of review, an appellate

court undertakes an independent review of the evidence without deference to the trial court's decision." *Kiser v. United Dairy Farmers*, 10th Dist. No. 22AP-539, 2023-Ohio-2136, ¶ 9, citing *Nazareth Deli L.L.C. v. John W. Dawson Ins. Inc.*, 10th Dist. No. 21AP-394, 2022-Ohio-3994, ¶ 22.

{¶ 14} Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the non-moving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 15} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party, however, cannot discharge its initial burden under this rule with a conclusory assertion that the non-moving party has no evidence to prove its case; the moving party must specifically point to evidence of a type listed in Civ.R. 56(C), affirmatively demonstrating that the non-moving party has no evidence to support the non-moving party's claims. *Dresher* at 293. Once the moving party discharges its initial burden, summary judgment is appropriate if the non-moving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Id.*; Civ.R. 56(E).

## A. The trial court decision resolved all claims (Third Assignment of Error)

{¶ 16} In their third assignment of error, appellants contend the trial court erred to their material prejudice by granting ODOT's motion for summary judgment as to Counts 2 and 3 of the complaint despite failing to address their claims relating to "parcels 64-T, 62-WD - PRO, 64-WD - PRO, the property rights sought in parcels 62-WD and 64-WD, and the area of property sought in parcels 62-WD and 64-WD." (Appellants' Brief at ix-x.) Because the third assignment of error implicates the finality of the trial court judgment, and therefore this court's ability to entertain this appeal, we address it first. *See Soliman v. Nawar*, 10th Dist. No. 22AP-379, 2023-Ohio-3650, ¶ 8, quoting *VanDyke v. Columbus*,

10th Dist. No. 06AP-1114, 2007-Ohio-2088, ¶ 8 (" 'Without an express determination that there is no just cause for delay, any order, that adjudicates fewer than all the claims does not terminate the action.' ").

{¶ 17} ODOT's motion for summary judgment sought review of "all non-dismissed claims, i.e. Counts I-III, and Count IV as to Director Marchbanks." (Footnote omitted.) (Mot. for Summ. Jgmt. at 1.) The trial court expressly granted ODOT's motion "in its entirety" after sustaining ODOT's motion "as to Counts I, II, and III," thereby clearing the way for appropriation proceedings to proceed in Delaware County. (Decision at 2, 7.) With this assignment of error, appellants seem to argue the trial court should have been more specific in its decision. However, they have not cited any law requiring the trial court to do so and have not explained how the trial court's decision otherwise failed to determine all of appellants' claims. Because appellants have not demonstrated an error as to the trial court's decision, their third assignment of error is overruled. *See State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (stating general rule that an appellant bears the burden of affirmatively demonstrating error on appeal).

## B. The appropriation was "necessary" for a "public use" (First, Second, and Fifth Assignments of Error)

{¶ 18} In this case, appellants seek judicial declarations, pursuant to R.C. 2721.03, that ODOT's appropriation of Parcels 62-WD, 64-WD, and 64-T is "neither necessary nor for a public use" as required under the appropriation statutes and therefore, "ODOT did not have the right to commence proceedings to appropriate [those] Parcels." (Compl. at 10-11, 15.) They request an injunction, in part, on this same basis.

{¶ 19} Appellants contend the trial court erred in granting summary judgment to ODOT on this issue and in denying their motion for summary judgment, since the trial court imposed an outdated burden and standard of review (first assignment of error), and inappropriately applied the evidentiary presumption that land taken for a public road is a public use and necessary when the properties here are not being taken for that purpose (second assignment of error). They further contend, "[b]ased on the Civ.R. 56(C) materials submitted herein, ODOT cannot meet [their] burden of proving that the [t]akings are necessary for a public use," including challenging the need for the land in fee simple and the project description of 64-T, and further contend the trial court should have instead

granted their partial motion for summary judgment. (Appellants' Brief at 52, fifth assignment of error.)

{¶ 20} Since appellants' first, second, and fifth assignments of error all challenge aspects of the trial court's determination on summary judgment concerning whether the appropriations are necessary for a public use, we address them together. As explained further below, while the trial court did appear to rely, in part, on an outdated statement of the burden and abuse of discretion standard of review, our independent review of the motions for summary judgment and Civ.R. 56 supporting materials shows the trial court did not ultimately err in granting ODOT summary judgment as to the necessity of the appropriations for a public use.

{¶ 21} "The property rights of an individual are fundamental rights, and 'the bundle of venerable rights associated with property is strongly protected in the Ohio Constitution and must be trod upon lightly, no matter how great the weight of other forces.' " *Ohio Power Co. v. Burns*, 171 Ohio St.3d 84, 2022-Ohio-4713, ¶ 22, quoting *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, ¶ 38. To enforce this constitutionally protected property right, the Ohio legislature prohibits government agencies from using eminent domain to acquire any property that is not "necessary and for a public use." R.C. 163.021(A); *State ex rel. Ohio History Connection v. Moundbuilders Country Club Co.*, 171 Ohio St.3d 663, 2022-Ohio-4345, ¶ 41. *Burns* at ¶ 22, citing *Norwood* at ¶ 39, 41 ("The state * * * may seize private property when it is necessary for public use.").

{¶ 22} " 'Public use' " is statutorily defined by what it is not: " '[p]ublic use' does not include any taking that is for conveyance to a private commercial enterprise, economic development, or solely for the purpose of increasing public revenue," subject to exceptions not relevant here. R.C. 163.01(H)(1). Moreover, "roads" and "similar * * * uses of land" are "presumed to be public uses." R.C. 163.01(H)(2). Pursuant to R.C. 5501.01(C), "[r]oad" or "highway" includes "all appurtenances to the road or highway, including but not limited to, bridges, viaducts, grade separations, culverts, lighting, signalization, and approaches on or to such road or highway." ODOT is obligated by statute to, among other responsibilities, "construct, reconstruct, widen, resurface, maintain, and repair the state system of highways and the bridges and culverts thereon." R.C. 5501.11(A)(1).

{¶ 23} To accomplish this job, the director is tasked with "general supervision of all roads comprising the state highway system" and has discretion to "alter, widen, straighten, realign, relocate, establish, construct, reconstruct, improve, maintain, repair, and preserve any road or highway on the state highway system, and, in connection therewith, relocate, alter, widen, deepen, clean out, or straighten the channel of any watercourse as the director considers necessary." R.C. 5501.31. Concomitantly, "[t]he director of transportation may appropriate real property pursuant to sections 163.01 to 163.22 of the Revised Code or as otherwise provided by law." R.C. 163.02(B). Pursuant to statutes governing ODOT, "[t]he director may purchase or appropriate property necessary for the location or construction of any culvert * * * or the approaches thereto, * * * or for any other highway improvement" and "may purchase or appropriate, for such length of time as is necessary and desirable, any additional property required for the construction and maintenance of slopes, * * * sewers, [or] drainage systems, * * * incident to any highway improvement." R.C. 5501.31.

{¶ 24} The appropriation statutes do not define the second prerequisite to an appropriation: that the appropriation is "necessary" for a public use, which is also referred to as the "necessity" requirement. This court and at least one other appellate court have simply stated that in the context of appropriation, " 'necessity' means because of a 'public use.' " *Bd. of Edn. of City School Dist. of Columbus, Ohio v. Holding Corp. of Ohio*, 29 Ohio App.2d 114, 119 (1971); *Eschtruth Invest. Co., L.L.C. v. Amherst*, 9th Dist. No. 10CA009870, 2011-Ohio-3251, ¶ 10. Other Ohio appellate districts have further explained, " '[t]he "necessity" required in the exercise of the power of eminent domain does not require a showing of absolute necessity, but includes "that which is reasonably convenient or useful to the public." ' " *Ohio Power Co. v. Duff*, 12th Dist. No. CA2020-01-004, 2020-Ohio-4628, ¶ 32, quoting *Ferencz v. Toledo*, 6th Dist. No. L-87-379 (Dec. 30, 1988), quoting *Giesy v. Cincinnati, Wilmington & Zanesville RR. Co.*, 4 Ohio St. 308, 327 (1854). *E.g., Columbia Gas of Ohio, Inc. v. Holloway*, 3d Dist. No. 14-23-18, 2023-Ohio-4257, ¶ 10 (same definition); *State ex rel. Ohio History Connection v. Moundbuilders Country Club Co.*, 5th Dist. No. 2019 CA 00039, 2020-Ohio-276, ¶ 37 (same definition), *aff'd* 2022-Ohio-4345; *Sunoco Pipeline L.P. v. Teter*, 7th Dist. No. 16 HA 0002, 2016-Ohio-7073 (same definition).

{¶ 25} The taking agency bears the burden of proving an appropriation is necessary for a public use. R.C. 163.021(A) ("In any appropriation, the taking agency shall show by a

preponderance of the evidence that the taking is necessary and for a public use"); R.C. 163.09(B)(1)(a) (stating that, when a landowner challenges the right to make the appropriation or the necessity for the appropriation, the burden of proof is generally upon the public agency by a preponderance of the evidence).

{¶ 26} However, "[a] resolution or ordinance of the governing or controlling body, council, or board of the agency declaring the necessity for the appropriation creates a rebuttable presumption of the necessity for the appropriation if the agency is not appropriating the property because it is a blighted parcel or part of a blighted area or slum." R.C. 163.09(B)(1)(a). A rebuttable presumption under R.C. 163.09(B)(1) "gives rise only to a prima facie showing of necessity." *Burns* at ¶ 32. It does not "shift the ultimate burden of proof" from ODOT to the landowners but, rather, imposes on the landowner the burden of producing evidence to rebut the presumption. *Id. See Ohio History Connection*, 2022-Ohio-4345, ¶ 23 (stating property interest holder "bore the burden of rebutting the statutory presumption that appropriation was necessary" under R.C. 163.09(B)(1)(a)). Moreover, to meet this burden, landowners must produce evidence "that balances or counterbalances the presumption," at which point "the presumption disappears, and the case must be resolved on the evidence presented under the original burden of proof." *Burns* at ¶ 32. In then reviewing the evidence presented of the necessity of an appropriation, the trial court may give the government or agency "some deference" but should not accept "a blanket statement that all the easement terms are necessary, without findings to support that decision beyond the deference given to [the agency]." *See Burns* at ¶ 35, citing *Norwood* at ¶ 62, 66.

{¶ 27} Here, appellants argue these "[t]akings are not for roads" and therefore ODOT is not entitled to the presumption the appropriations are for a "public use" under R.C. 163.01(H)(1). (Appellants' Brief at 34-36.) We disagree. ODOT presented petitions wherein Director Marchbanks expressed its intent to appropriate appellants' properties for the purpose of making, constructing, repairing or improving a 1.1 mile section of State Route 315, a toll-free-state highway. ODOT submitted exhibits, affidavits, and responses to discovery to show the purpose of ODOT's appropriations is to improve or repair State Route 315 and not "for conveyance to a private commercial enterprise, economic development, or solely for the purpose of increasing public revenue." R.C. 163.01(H)(1).

*See* Turowski Affidavit at 1 (stating the purpose of appropriating portions of appellants' properties abutting State Route 315 is for repairing or improving a portion of State Route 315 with a focus on alleviating icing and ponding, stabilizing slopes, maintaining and improving drainage on and along State Route 315 and averring there is no private or non-public use for the appropriations); Turowski Report at 1-2 (stating purpose of appropriations is to facilitate "long term" solutions to "repair and improve" and "construct and maintain * * * in perpetuity" State Route 315, which exhibited cracks and was subject to natural conditions such as sloping and close proximity to the Olentangy River, through means such as establishing ditches, replacing culverts, slope grading, and future retaining walls); Turowski Nov. 29, 2022 Depo. at 52, 138, 143-45 158, 201 (describing culverts, ditching, slope stabilization and grading, and guardrail work to improve State Route 315).

{¶ 28} The evidence presented by ODOT shows the appropriations are part-and-parcel with improving State Route 315, and as a result, are presumed to be public uses by statute. R.C. 163.01(H)(2); 5501.01(C) (roads and similar uses of land along with all appurtenances, including but not limited to culverts, are presumed to be for public use). Appellants, in turn, presented no evidence that the taking is "for conveyance to a private commercial enterprise, economic development, or solely for the purpose of increasing public revenue." R.C. 163.01(H)(1). Moreover, appellants admitted that the appropriations "relate to the [State Route 315 improvement] Project insofar as the [appropriations] refer to the Project" and appellants' expert agreed the appropriations of appellants' properties specifically are in furtherance of the project to maintain and improve State Route 315. (Appellants' Reponses to ODOT's First Set of Interrogatories and Requests for Admission at 2; Antonetz Depo at 51-54.) Their expert and Civ.R. 30(B)(5) designee also agreed that maintaining and repairing public roads generally, including managing drainage and controlling erosion, are public purposes. (Antonetz Depo at 59; James Depo. at 27, 39.) Moreover, while appellants also argue there is no public purpose because a problem does not exist on their properties, that argument is relevant to the necessity of the appropriations. (*See* James Depo. at 29.) Even viewing the evidence most strongly in their favor under the standard for summary judgment, appellants did not overcome the presumption in favor of ODOT that these appropriations are for a public use.

{¶ 29} Appellants additionally argue ODOT is not entitled to the statutory presumption that these specific appropriations are *necessary* for the public use, i.e. repairs, improvements, and long term maintenance of this portion of State Route 315. We again disagree. In the petitions to appropriate, Director Marchbanks declared the appropriation of appellants' properties are necessary to making, constructing, repairing or improving a section of State Route 315. While appellants argue this "blanket statement" by Director Marchbanks is insufficient to establish necessity under *Burns* at ¶ 35, *Burns* was not analyzing whether the presumption in R.C. 163.09(B)(1)(a) was triggered but, rather, was analyzing R.C. 163.09(B)(1)(b). (Appellants' Brief at 39, 57.) R.C. 163.09(B)(1)(b) only creates a rebuttable presumption of the necessity for an appropriation for a public utility or common carrier if that body presents "evidence of the necessity for the appropriation." The section at play here, R.C. 163.09(B)(1)(a), has no such evidentiary requirement to trigger the presumption. In this case, Director Marchbanks' resolution did give rise to a presumption the appropriations are necessary for a public use under R.C. 163.09(B)(1)(a).

{¶ 30} Appellants did not rebut the presumption that the appropriations are necessary for a public use, again, even viewing the evidence most strongly in their favor under the summary judgment standard. Appellants agree the appropriations relate to the State Route 315 project generally, and that, at a minimum, a drainage ditch will be installed in the parcels appropriated as part of the State Route 315 improvements. (Appellants' Reponses to ODOT's First Set of Interrogatories and Requests for Admission at 2; Appellants' Brief at 37.) Appellants' expert agreed the appropriations of appellants' properties, specifically, are in furtherance of the project to maintain and improve State Route 315. (Antonetz Depo at 51-54.) While appellants discount ODOT's need to improve and maintain State Route 315 at the site of their properties and challenge the cause of any potential road issue and whether ODOT's solutions are appropriate, they have not overcome the presumption the appropriations are necessary for a public use. Rather, undisputed evidence in this case shows ODOT's appropriation of appellants' properties to repair, improve, and maintain this susceptible section of State Route 315, both immediately and over the long term, is "reasonably convenient or useful to the public" and "because of a 'public use.' " *Duff* at ¶ 32; *Holding Corp. of Ohio* at 119; *Eschtruth Invest. Co.* at ¶ 10. Having reviewed the materials submitted to the trial court de novo and considered the

arguments in the appellate briefs, appellants have not produced evidence to contradict ODOT on this issue in a material manner.

{¶ 31} Lastly, we agree with appellants that the case relied on by the trial court, *Atwood Regional Water & Sewer Dist.* at ¶ 33, cited an outdated version of R.C. 163.09(B), which placed the overall burden of proof on the landowner and, to overcome the presumption of necessity established through an agency's resolution or declaration, required the landowner to demonstrate the agency abused its discretion. However, as explained above, even under the correct burden and presumptions, summary judgment in favor of ODOT on these issues was appropriate. Therefore, any error by the trial court in this regard is not prejudicial to appellants and does not warrant reversal.

{¶ 32} Overall, ODOT demonstrated no genuine issue of material fact remains to be litigated, ODOT is entitled to judgment as a matter of law and, based on the evidence viewed in favor of appellants, reasonable minds can come to but one conclusion and that conclusion is adverse to appellants on this issue. Civ.R. 56; *Grady* at 183. Accordingly, appellants' first, second, and fifth assignments of error are overruled.

## C. The appraisals were sufficient to support the petitions

{¶ 33} Appellants contend the trial court erred to their material prejudice by denying their motion for partial summary judgment as to Counts 1 and 3 of their complaint. In Count 1, appellants seek judicial declarations that "ODOT's offers to purchase [appellants' properties] fail to satisfy the requirements of R.C. 163.04 and 163.041 because the offers are not based on appraisal which include before-appropriation and after-appropriation values of the properties" and therefore "ODOT did not have a right to commence proceedings to appropriate said [p]arcels." (Compl. at 9, 15.) They request an injunction, in part, on this same basis. For the following reasons, summary judgment in favor of ODOT on these counts is warranted.

{¶ 34} R.C. 163.04(B) requires that an appropriating agency provide a "good faith offer" to purchase real property before filing its petition for appropriation. An agency may appropriate the property only after the agency obtains an appraisal of the property and provides a copy of it to the owner. R.C. 163.04(C). The agency is obligated to provide the copy or summary of the appraisal to the property owner "at or before the time the agency makes its first offer to purchase the property." R.C. 163.04(C).

{¶ 35} The parties agree that the appraisal provided by ODOT as part of its notice and good faith offer to appellants, prior to initiating appropriation proceedings, valued only the property ODOT sought to purchase or appropriate and did not include an appraisal as to the "before and after" value of the residue. (ODOT's Mot. for Summ. Jgmt. at 5-6; Appellants' Memo in Opp. at 2; Compl. at 26.) However, the parties disagree as to how the appraisal must value the properties to serve as a basis for a good-faith offer prior to instituting appropriation proceedings. Specifically, appellants argue, "[t]he requirements of R.C. 163.04 are jurisdictional and imply that an appropriating agency's 'good faith offer' must be premised on an appraisal assessing just compensation" in accordance with R.C. 163.59(D), which requires value based on the entire property in the "before-and-after conditions." (Appellants' Brief at 44-45.)

{¶ 36} Initially, to the extent appellants base their assigned error on ODOT's alleged lack of compliance with R.C. 163.59(D), that deficiency would not affect the validity of the appropriation. R.C. 163.59(D) obligates the head of the acquiring agency, before the initiation of negotiations for real property, to establish an amount that the head of the acquiring agency believes to be "just compensation for the property" and make a prompt offer to acquire the property for no less than that full amount, which cannot "be less than the agency's approved appraisal of the fair market value of the property." The Supreme Court of Ohio recently noted, "the policies set out in R.C. 163.59 are explicitly *not* prerequisites to the filing of an appropriation action." (Emphasis sic.) *Ohio History Connection*, 2022-Ohio-4345, ¶ 35, citing R.C. 163.52(A) ("The failure of an acquiring agency to satisfy a requirement of section 163.59 of the Revised Code does not affect the validity of any property acquisition by purchase or condemnation."). The court further explained, "[a]n agency's adherence or nonadherence to the appraisal and offer provisions in R.C. 163.59(C) and (D) would therefore not conclusively establish whether the agency satisfied the good-faith-offer prerequisite found in R.C. 163.04(B)." *Id.*

{¶ 37} Because the validity of the appropriation would not be undermined by ODOT's alleged failure to comply with R.C. 163.59, appellants' argument to the contrary is, essentially, of no consequence at this point in the appropriation proceedings. *See*, *e.g.*, *Lawnfield Properties, L.L.C. v. Mentor*, 11th Dist. No. 2017-L-130, 2018-Ohio-2447, ¶ 29, citing R.C. 163.52(A) ("[E]ven if Mentor was required by R.C. 163.59(D) to offer an amount

for appellant's residual damage, Mentor's failure to do so would not affect the validity of the appropriation or justify its dismissal."). The assignment of error, therefore, does not demonstrate reversable error and fails on this basis.

{¶ 38} Regardless, the assignment of error likewise lacks merit since ODOT did comply with the appraisal requirement to commence appropriation proceedings. R.C. 163.05. "Appraisal" is statutorily defined as "a written statement independently and impartially prepared by a qualified appraiser, or a written statement prepared by an employee of the acquiring agency who is a qualified appraiser, setting forth an opinion of defined value of an adequately described property as of a specified date, supported by the presentation and analysis of relevant market information." R.C. 163.59(C). The plain language of the definition does not require "before-and after-appropriation values of the properties" as sought by appellants in their requested declaration in Count 1. Instead, the appraisal is based on valuing the "described property." R.C. 163.59(C).

{¶ 39} This reading of the statute is supported by persuasive authority from the Third District Court of Appeals case, *Maumee Watershed Conservancy Dist. v. Buescher*, 3d Dist. No. 12-17-06, 2017-Ohio-9086, *appeal not accepted*, 2018-Ohio-1795, which addressed "assignments [of error] challeng[ing] the jurisdiction of the trial court stemming from the [appropriating agency's] failure to complete a 'before and after' appraisal prior to filing their petitions for appropriation." *Id*. at ¶ 12. Based on its assessment of R.C. 163.04, 163.041, 164.05, and 163.14 and appellants asserted case law, the *Buescher* court determined no authority supported a "requirement of a 'before and after' appraisal *prior to* the filing a petition for appropriation." (Emphasis sic.) *Id*. at ¶ 21.

{¶ 40} The cases cited by appellants for the proposition that pre-petition offers must be based on appraisals that include before and after-appropriation values of the properties concern appraisals to determine just compensation at trial following appropriation. *See Masheter v. Kebe*, 34 Ohio App.2d 32 (8th Dist.1973) (concerning appeal from judgment on a jury verdict determining the value of property taken by eminent domain); *Hurst v. Fondriest*, 5th Dist. No. 91AP100074 (May 29, 1992) (appeal from a judgment entering a jury verdict that awarded appellee property owners just compensation for real property appropriated by ODOT for roadway improvements); *Octa v. Octa Retail, L.L.C.*, 12th Dist. No. CA2007-04-015, 2008-Ohio-4505 (appeal following a judgment that, after a jury trial,

entered an award to the landowner to compensate for village's appropriation of land based upon an urban renewal plan). The cases cited by appellants are distinguishable, and we are not persuaded they apply to appraisals supporting an agency's offer to landowners prior to appropriation proceedings.

{¶ 41} Lastly, appellants argue the appraisal submitted by ODOT to support a good-faith offer is "not an appraisal" but instead a "Value Analys[i]s" that does not meet the R.C. 163.04(C) appraisal requirement. (Appellants' Brief at 48.) The trial court did not directly address this argument after tailoring its decision to the counts of the complaint. We agree with the trial court's approach as this argument does not support the declarations and injunction sought by appellants in this case, which challenge how the appraisals must assess value—not the validity of the appraisal itself. As a result, this argument is inconsequential to appellants' requested declarations and injunctions and does not support reversable error.

{¶ 42} Even if, for sake of argument, this issue is relevant to Count 1 or 2 of appellants' complaint, it fails on the merits. As previously stated, "appraisal" is statutorily defined as "a written statement independently and impartially prepared by a qualified appraiser, or a written statement prepared by an employee of the acquiring agency who is a qualified appraiser, setting forth an opinion of defined value of an adequately described property as of a specified date, supported by the presentation and analysis of relevant market information." R.C. 163.59(C). ODOT met this definition in this case for purposes of making a good-faith offer prior to initiating appropriation proceedings. (*See* Exs. 3 and 4 to Compl.)

{¶ 43} Accordingly, appellants' fourth assignment of error is overruled.

**IV. Conclusion**

{¶ 44} Having overruled appellants' five assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER and BEATTY BLUNT, JJ., concur.

_____